**In the Matter of Ilene Ruth MOSES, Debtor.**

**Bankruptcy No. 89–05640–G.**

United States Bankruptcy Court, E.D. Michigan, Southern Division.

July 21, 1994.

David J. Vigna, Farmington Hills, MI, for Michigan Nat. Bank.

Peter A. Jackson, Bernard T. Lourim, Detroit, MI, for debtor.

David W. Allard, Trustee, Detroit, MI.

Roy H. Christiansen, Detroit, MI, for creditor.

## *MEMORANDUM OPINION DISMISSING CASE WITHOUT PREJUDICE*

RAY REYNOLDS GRAVES, Chief Judge.

### *Background*

This matter is before the Court upon remand to this Court for the narrow purpose of determining whether the debtor's action in the case resulted in unreasonable delay in the distribution of assets for this case and if so whether this chapter 7 case should be dismissed with or without prejudice. On February 1, 1994 this Court conducted an extensive evidentiary hearing on these narrow issues. Upon conclusion of the hearing and after the taking of testimony from witnesses and an extensive colloquy between the parties and the Court, this Court took the matter under advisement. The parties were asked to submit supplemental briefs clearly detailing the facts and law necessary in making a determination relative to the order of

remand. Based upon the foregoing, this Court hereby withdraws its prior ruling of dismissing this case with prejudice for the reasons set forth below.

## Introduction

This matter was previously before the Court upon creditor Michigan National Bank's ("MNB") Motion to Dismiss Debtor's Chapter 7 Petition Pursuant to 11 U.S.C. § 707(a). MNB has previously asked this Court to dismiss debtor Ilene Ruth Moses' chapter 7 bankruptcy petition because the debtor refused to answer certain questions during a 2004 examination. The debtor at that time alleged that due to a confidentiality clause contained in an employment contract, she was prohibited from answering certain questions. The chapter 7 Trustee ("Trustee") David W. Allard and creditor, Semifora A.G. ("Semifora") joined MNB in its motion to dismiss.[1] On October 29, 1992, the case was dismissed with prejudice.

## Procedural Facts

1. August 1, 1989 this case was commenced as an involuntary chapter 7 case.

2. August 21, 1989, the debtor filed Debtor's Brief in Support of Motion to Dismiss or in the Alternative, Motion to Suspend Proceedings Pursuant to 11 U.S.C. § 305. The debtor claimed to be negotiating with certain overseas parties in the restructuring of her business interest which would involve sufficient financing to pay all Moses' creditors in full.

3. September, 19, 1989, an *Order Converting Case, on Debtor's Motion from Chapter 7 to Chapter 11* was entered.

4. On December 19, 1989, an *Order Granting Motion for Appointment of Trustee* was granted due to this Court's finding that the case could not be properly administered by the debtor in possession and that it was in the best interest of the estate and its creditors to appoint a Trustee because the debtor's assertion of the 5th amendment prevented answering certain questions.

5. On September 10, 1990 the chapter 11 case was converted back to a chapter 7 case.

6. On December 4, 1990, this Court entered an order compelling the debtor to answer questions where debtor asserted her fifth amendment privilege against self incrimination.

7. On December 12, 1990, the District Court stayed the Bankruptcy Court's order pending appeal of the debtor' right to assert her fifth amendment privilege due to a fear of foreign prosecution.

8. April 5, 1991, this Court entered its *Order Granting Motion Compelling Discovery and Production of Documents and Order Denying Motion for Protective Order and Motion for Order Requiring Application for Discovery,* in response to motions in which movant Belvoir Designs an insider of the debtor sought said protective order.

9. On August 9, 1991, the District Court upheld the debtor's assertion of her privilege against self incrimination. 779 F.Supp. 857.

10. On August 28, 1991, MNB filed a complaint to deny debtor's discharge. The Trustee and Semifora joined MNB in its motion.

11. On November 21, 1991, this Court denied the motion to dismiss.

12. On December 27, 1991, MNB filed a notice of appeal appealing this Court's November 21, 1991 decision.

13. On January 10, 1992, the District Court vacated this Court's order to compel testimony and remanded the case to this Court.

14. A status conference was held on September 17, 1992. The debtor agreed to answer questions posed in a Rule 2004 exam and to fully disclose all requested information.

---

1. On September 30, 1991, trustee requested that the Court either (a) grant the motion to dismiss but retain jurisdiction over all property of the estate, or (b) deny the motion to dismiss. However, during oral argument on October 22, 1990 the trustee joined MNB and Semifora in requesting the dismissal of the case only.

15. MNB's motion to dismiss debtor's motion for a protective order was held on October 22, 1992.

16. On October 29, 1992, this Court dismissed debtor's chapter 7 case with prejudice due to the debtor's efforts to frustrate and delay the creditors and prevent the administration of the debtor's estate.

## Facts

On August 1, 1989 this case was commenced as an involuntary chapter 7. On or about September, 1989, the petitioning creditors and the debtor consented to the conversion of this case to a voluntary chapter 11. Originally, the debtor's schedules and assets included a substantial sum of stock in Jolland, Ltd., ("Jolland") a Hong Kong Corporation. The Jolland stock was initially valued at $89,000,000.00 due to the value placed on the company by its auditors as of December 31, 1981. Later, after the debtor was unable to collect the accounts receivable the value of the Jolland stock was listed as "unknown."

According to MNB, Jolland was owed tens of millions of dollars in accounts receivable by an international clothing cartel referred to as Romtex ("Romtex"). MNB also contends that it is well documented in the record that the debtor's agent had been negotiating on her behalf for the repayment of these accounts owing to Jolland,[2] and that these negotiations were conducted in tandem with a proposed work contract, which was the subject of the October 22, 1992 dispute.[3]

The identity of the persons owing the account receivables apparently was unknown to debtor Moses and may only be identified by her British attorneys.[4] MNB suspected that the debtor's proposed employment contract was the missing link to the collectability of the past due accounts receivable. If in fact the contract was relevant to obtaining additional assets for the estate, MNB argued that indeed it had a right to obtain that information. Moreover, MNB is entitled to uncover what the inter relationships of these various "mystery" entities are and the feasibility of acquiring additional assets for the estate. The discovery of this information was thought to be imperative for the just administration of the estate.[5]

On December 19, 1989 David W. Allard was appointed as chapter 11 trustee. Due to the debtor's inability to adequately file a plan of reorganization the case was converted to a chapter 7 once again. Mr. Allard was then appointed as chapter 7 trustee.

On or about October 18, 1990, at the meeting of creditors the debtor asserted her fifth amendment privilege against self incrimination in blanket fashion and refused to respond to questions concerning foreign assets including her interest in Jolland. Next, this Court entered its order compelling the debtor to answer questions concerning foreign assets. The matter was stayed by the District Court on December 12, 1990 pending the Court's order.

On February 27, March 5 and 6, 1991 the meeting of creditors was reconvened, and the debtor refused to answer some 25 questions concerning foreign assets. Subsequently the District Court entered its opinion in an order which upheld the debtor's assertion of her fifth amendment privilege against self incrimination on August 9, 1991. As a result of the Trustee not being able to ascertain necessary information in order to properly administer the debtor's estate, MNB, the Trustee and Semifora filed a complaint to

2. Representative samples of evidence entered into evidence in November, 1991 by MNB showed that during 1985 Mrs. Moses was currently employed by the Foreign Investor Group at an annual salary of $1,200,000.00. Her employment by the Foreign Investor Group pursuant to her existing 1985 contract terminated early in 1990. "Mrs. Moses wishes to negotiate a new employment contract with the Foreign Investor Group which will give her a substantially improved compensation package."

3. Debtor, Ilene Ruth Moses alleges that she is prohibited from answering questions regarding a post petition employment contract due to a confidentiality clause.

4. The debtor indicates that she is unaware of the identities of the persons owing the accounts receivable.

5. However, it was later determined during the hearing held on February 1, 1994 that the debtor could not identify the mystery entity, nor was the employment contract useful.

deny discharge. MNB also filed a motion to dismiss debtor's petition without prejudice. Semifora A.G. and the Trustee joined MNB in its motion. This Court denied the motion to dismiss on November 21, 1991 at the end of oral argument. MNB appealed this Court's decision. The District Court vacated this Court's order on June 10, 1992, and the case was remanded to this Court.

On September 17, 1992 a status conference was held, and it was determined that the motion before the Court was MNB's motion to dismiss in light of the District Court's opinion and order vacating the Bankruptcy Court's order. The District Court's finding was based upon an inability of the Trustee to effectively administer the case. Remarkably, in the face of having her chapter 7 case dismissed, the debtor waived her fifth amendment privilege and asserted that somehow she no longer had a real and substantial fear of prosecution. After waiving the privilege, the debtor agreed to answer any remaining questions pursuant to a scheduled 2004 examination. Further, debtor's counsel represented to this Court that debtor Moses would not seek to assert any additional privileges and that the debtor was ready to give the Trustee her full cooperation and would provide full disclosure of the unanswered questions.[6]

On October 22, 1992 the parties came before this Court and debtor argued yet another reason as to why certain questions that were asked of her could not be answered. Although this time, debtor Moses did not assert any privileges, she did indicate that she was prohibited from answering certain questions due to a confidentiality clause contained in her employment contract. Thus, debtor requested a protective order prohibiting her response to certain questions. This court adjourned the matter for yet another week in order to review the authority that debtor's counsel presented during the course of argument. Additionally, all parties were to provide this Court with supplemental briefs on the issue of whether the debtor had

a legal basis for requesting a protective order.

On October 29, 1992 after reviewing the respective pleadings, supplemental pleadings and upon oral argument this Court granted MNB's request and dismissed debtor's case with prejudice.

### Discussion

MNB asserts that the debtor's case was properly dismissed with prejudice because she acted in bad faith and in a manner prejudicial to her creditors by engaging in a pattern of delay tactics which has had the effect of depriving the estate of assets and/or information relevant to the collectability of the estate assets.

According to MNB, the debtor has for more than four years withheld information relevant to the collectability of tens of millions of dollars of accounts receivable owing to Jolland, Limited, the debtor's wholly owned company. Among other tactics she has (a) asserted early in her case that such information was of a confidential nature; (b) asserted the fifth amendment privilege against self incrimination for a period in excess of three years, first in blanket fashion, then narrowed only after protracted litigation; (c) abandoned the privilege when a dismissal of her case was imminent; and after repeated orders from this Court for full disclosure the debtor, upon abandoning her fifth amendment privilege filed a motion for a protective order seeking to suppress a contract which was thought to be clearly relevant to information concerning the largest single asset of this estate; (d) refused to answer or failed to provide complete answers to questions submitted to her after this Court ordered full disclosure. Concurrently with these tactics, the debtor did all she could to either distract the parties from their focus on obtaining information or to prevent the dissemination of information from other sources. She accomplished this by entering into a stipulated confidentiality order and stipulation for entry of confidentiality order

---

**6.** Debtor's counsel represented to this Court that there would not be any further delays and that debtor would fully cooperate with the Trustee and creditor in responding to questions. The matter was adjourned until October 22, 1992 until after MNB and the Trustee had an opportunity to request answers to their questions that had gone unanswered for more than six years.

dated March 12, 1990 with the Trustee upon the premise that she would disclose the confidential or privileged information so as to allow the Trustee to administer the estate. That order is still in effect but presumably she either failed to provide information or fully disclose, since the Trustee joined with Michigan National Bank and Semifora in a motion to dismiss.

MNB alleges that the debtor's overall conduct throughout the proceedings in this Court evidences a pattern of evasion which has prevented creditors from exercising their rights against this debtor for over four years. To date the only non-exempt unencumbered estate property liquidated by the Trustee is a portion of debtor's furniture, sold to Belvoir for $20,000.00, compared to debtor's schedules showing an excess of $450,000.00 in non-exempt unencumbered personal property. And, of course, nothing has been collected on the Jolland receivables.

The debtor on the other hand contends that her actions certainly did not constitute delay and in no way prejudiced the creditors. In support of her contentions the debtor asserts that the October 21, 1992 motion to limit disclosure of her post petition employment contract (the "In Camera Motion") did not constitute delay that was unreasonable, much less prejudicial to creditors. Debtor indeed contends that the In Camera Motion was a good faith effort to establish the lack of connection between the employment contract and the account due Jolland, Ltd., from Romtex A.G., without breaching the contract and thereby losing an employment opportunity. Moreover, the debtor asserts that her conduct did not constitute delay that was unreasonable much less contemptuous. The debtor also contends that this case cannot be dismissed with prejudice even if the In Camera Motion were held to constitute prejudicial delay due to the debtor's good faith disclosures to the trustee during the chapter 11 case and to the trustee and creditors during the chapter 7 case. This willingness to cooperate the debtor asserts, permitted administration of the estate without exposing her to greater criminal jeopardy. However, to the contrary, the nearly one year delay caused by the trustee's pre-emptive strike against her fifth amendment privilege cannot be attributed to the debtor. Nor can the now two and one-half year delay caused by the Michigan National Bank subsequent motion to dismiss her case.

Finally debtor asserts that there is an adequate legal basis for her In Camera Motion and therefore her case should not be dismissed with prejudice.

## I.

■ Dismissal of a chapter 7 petition with prejudice is permissible under 11 U.S.C. § 707(a). Dismissal is appropriate where a debtor fails or refuses to provide information. Dismissal pursuant to 11 U.S.C. § 707(a) is rather broad. 11 U.S.C. § 707(a) provides:

(a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause including—

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees or charges required under chapter 123 of title 28; and

(3) failure of the debtor in a voluntary case to file, within fifteen days or such additional times as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

■ It is important to note that 11 U.S.C. § 707(a) represents an illustrative not an exhaustive list. (Cause is not limited to the sub-parts of A above). See *In re Carroll*, 24 B.R. 83 (N.D.Ohio 1982).

In determining whether it is appropriate to dismiss a chapter 7 case pursuant to 11 U.S.C. § 707(a), we must revisit the District Court's decision in *Moses v. Allard*, 779 F.Supp. 857 (E.D.Mich.1991). In fact a similar issue of a failure to disclose information was examined in *Moses* involving this same debtor. The Court in *Moses* affirmed that clearly a debtor's failure to provide information about an estate may render a trustee unable to administer that estate, *Moses, supra*. Accordingly, cooperation with the Trustee in administering a bankruptcy estate

is deemed paramount if not imperative by a debtor. A lack of cooperation works to impede the just administration of an estate. The *Moses* Court continues [that] "in such cases, it is possible that neither the creditors nor the trustee would be able to determine the assets of the estate and would thereby be precluded from effectuating a just discharge." *Moses,* at 779. Thus, such action may constitute cause for dismissal.

The *Moses* Court concludes that "the debtor's refusal to provide information may render a trustee unable to administer an estate; it follows that a debtor's refusal to provide information may constitute cause for dismissal under 11 U.S.C. § 707(a)." In the Sixth Circuit, it has already been determined that the withholding of information may constitute cause for dismissal. The court in *Moses* adopts the reasoning in *In re Connelly,* 59 B.R. 421 (N.D.Ill.1986), regarding the assertion of the fifth amendment in bankruptcy proceedings. *In re Connelly* offered well reasoned and compelling concerns as to why a bankruptcy petition could be dismissed due to a lack of information. In fact, in the case *sub judice* the reasons are certainly less compelling and pale in comparison to the reasons enunciated in *Connelly.* The *Connelly* Court states:

> Bankruptcy Judges have dismissed cases which could not be administered.... Further, under 11 U.S.C. § 105 without sufficient information and documents necessary to administer the estate and without secure property for benefit of creditors a case must be dismissed to carry out the provisions of the Bankruptcy Code.

> Indeed it would work a fraud on this court and the entire bankruptcy system and on *Connelly's* creditors to permit and to withhold information and documents, obtain his discharge, and walk off with most or all of his unsurrendered property, *Connelly,* at 448.

> Indeed, this court may find that constant delay in the administration of debtor's estate constitutes cause for dismissal. See *Connelly, supra; Moses, supra; Scarfia v. Holiday Bank,* 129 B.R. 671, 675 (M.D.Fla. 1990). Bankruptcy Court can dismiss *sua sponte* a petition that cannot be administered due to a debtor's refusal to provide information.

## II.

This court must next inquire as to whether or not it has authority to dismiss this case with prejudice due to unnecessary delay thereby effectively prejudicing the creditors. Upon finding cause for dismissal this court must determine whether dismissal can be granted with prejudice. Some courts have determined that once cause for dismissal is found, courts may dismiss the bankruptcy case with prejudice. See *In re Steinmetz Group Ltd.,* 85 B.R. 633 (S.D.Fla.1988). The court in *Steinmetz* found it appropriate to dismiss a bankruptcy case due to a failure by the debtors to appear at a meeting with creditors. Although the debtor claims dismissal is not justified based on a failure to appear, there was no specification as to which officer, director, or person in control should appear. The court found debtor's explanation to be "nonsense." The court concludes that the debtor's attendance and availability for examination under oath at the meeting of creditors is mandatory, and the requirements of the debtor's attendance cannot be satisfied by the appearance of counsel. *In re Steinmetz Group Ltd., supra,* at 633.

■ Under the appropriate circumstances, this court has authority to dismiss a case with prejudice for cause. See *In re Frieouf,* 938 F.2d 1099 (10th Cir.1991), where the court examined 11 U.S.C. § 349(a) and concluded that by its terms § 349(a) gives bankruptcy courts discretion to determine whether there is cause to dismiss a case with prejudice. The *Frieouf* court held that a dismissal with prejudice must be found on some basis of bad faith and in a manner that was prejudicial to chapter 7 creditors. In that case the court established a clear record of delay and contemptuous conduct. Such behavior was determined to be prejudicial to the creditors. The court found that "debtor's creditors have been prevented from exercising their rights with regards to claims against the debtor and his property." *Frieouf,* at 1104.

█ This court previously found that in the case *sub judice* the debtor has painstakingly stalled and devised many causes for delay throughout the life of her chapter 7 case. The debtor has invoked her fifth amendment right against self incrimination only to cavalierly waive it when dismissal of her case was imminent. The debtor has creatively asserted many reasons why certain questions were unanswerable throughout the pendency of this case, finally having waived all privileges the debtor failed to articulate a legal basis to assert her latest refusal to cooperate.[7] The pattern that this debtor has developed has prevented her creditors from realizing any claims against the estate, and such claims are substantial.[8]

█ The determination of good faith is essentially an amorphous notion, largely defined by factual inquiry into the "totality of the circumstances"; the courts cannot formulate any precise formula or measurements to be deployed in a mechanical good faith equation, but any list of factors can be supplemented with the inquiry "whether the debtor is attempting to abuse the spirit of the bankruptcy code." See *Caldwell v. Hardin,* 851 F.2d 852 (6th Cir.1988). In determining whether or not the debtor acted in good faith when she sought to avoid disclosure of information with respect to her employment contract we must once again inquire as to whether a legal basis existed for the debtor's *in camera* motion. A debtor may avoid disclosure of information if disclosure would harm the debtor more than it would help the estate; F.R.Bank.P. 2004(b) and Fed. R.Civ.P. 26(c) as incorporated by F.R.Bank.P. 2014 and 11 U.S.C. § 726.

█ Commercial information is entitled to protection from unlimited disclosure even if it does not rise to the level of a trade secret. 11 U.S.C. § 107(b); *In re Orion Pictures,* CCH Bankr.Law Rptr., ¶ 75, 1993 WL 330065 (S.D.N.Y.1993) and *In re Ethic Associates,* 413 CBC2d 952 (E.D.Va.1985). Previously the debtor asserted that she maintained a constitutional right not to disclose her contractual agreement. The debtor waived her constitutional right to invoke a fifth amendment and was not entitled to any constitutional or inherent right to a discharge in bankruptcy. See *Scarfia v. Holiday Banks, supra; In re Connelly, supra.* A failure to provide necessary information allows this court to dismiss this case. The debtor previously argued that she may withhold information regarding a post petition confidential employment contract and relied upon *Kerr v. United States District Court for the Northern District of California,* 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976) for this premise.

The debtor's reliance on *Kerr* in support of her claim that this court may determine the reliance of her employment contract from an *in camera* review was inappropriate. In *Kerr,* the United States Supreme Court affirmed a Court of Appeals denial of petitioner's request for a writ of mandamus. The Court of Appeals had confirmed the trial court's refusal to view *in camera* personnel files in connection with the class action law suit brought by plaintiffs who were prisoners in the custody of petitioner, Department of Correction in the State of California. In *Kerr,* the petitioner's claimed that the records were relevant and protected by governmental immunity and sought *in camera* review. The underlying issue in *Kerr* was one of governmental privilege and whether petitioners had the right to assert that privilege and request an *in camera* review of the document. In this instance the debtor is not claiming a privilege, the debtor may only assert that her new work contract has nothing to do with the estate's right to information, generally; and, in particular, with respect to the account receivables owing to this estate to the debtor's ownership of Jolland, Ltd. However, such a supposition could have easily been disposed of by way of MNB's argument of relevancy. Once again the debtor was snatched away from the jaws of defeat and from imminently being trapped

---

7. However, the debtor has recently testified as to that employment contract.

8. Debtor owes in excess of $80,000,000.00. Similarly in the case at bar debtor's appearance at the 341 meeting and refusal to answer all questions impedes the process and cannot satisfy the requirements of the code. See *Steinmetz* at 633.

when it was determined at the February 1, 1994 hearing that there was no relevancy or connection to the employment contract, and therefore no possibility of recovering additional assets for the estate. Additionally, once again the debtor has been able to re-shape the conclusions of this court due to the discovery of newly decided cases in her favor as with the treaty between Switzerland and the United States that was approved after the debtor argued that she feared foreign prosecution.[9]

■ The debtor now provides this Court with the appropriate authority to support its contention that commercial information is entitled to protection from unlimited disclosure

pursuant to 11 U.S.C. § 107(b). *In re Orion Pictures*, CCH Bankr.Law Rep. 75, 421 (S.D.N.Y.1993). Accordingly the debtor had a basis to request an *in camera* review of debtor's employment contract. It is also uncontroverted by consent of the parties that the debtor was not in contempt of any order of this court.[10] Additionally, the debtor's testimony did not reveal or connect the failure to disclose the debtor's employment contract with the identification of additional assets for the estate.

Next, this court will examine the timeliness of this case and whether the debtor's actions caused delay.

| INITIAL CHAPTER 7 PHASE | CHAPTER 11 PHASE | CHAPTER 7 PHASE |
|---|---|---|
| Day 1—Inventory Chapter 7 | Day 53—Debtor files Matrix of Creditors | Day 406— Conversion to Chapter 7 |
| Day 50— Conversion to Chapter 11 | Day 66—Debtor files chapter 11 schedules | Day 430—Trustee files 5th Amendment Motion |
| | Day 86—Chapter 11 First Meeting of Creditors | Day 444—Chapter 7 First Meeting of Creditors |
| | Day 156—Order Approving Appointment of Trustee | Day 480—Detroit condo sold |
| | Day 225—Court enters confirmation order and debtor meets with trustee | Day 500—Chapter 7 Creditors Meeting continued |
| | Day 253—Debtor meets with trustee again | Days 576, 582, 583 —Chapter 7 Creditors Meeting continued |
| | Day 288—Debtor timely files plan | Day 584—U.S. Bankruptcy Court in New York orders production of documents, including Exhibits A, B & D |
| | | Day 604—Sale of furniture and home furnishings |

**9.** The debtor previously argued in this court that she had a fear of prosecution and that a treaty to extradict Americans would be ratified soon. The debtor's statement was unconfirmable at the time and the debtor did not provide any evidence to support this contention, however, such a treaty was later ratified.

**10.** Admitted fact no. 68.

| INITIAL CHAPTER 7 PHASE | CHAPTER 11 PHASE | CHAPTER 7 PHASE |
|---|---|---|
| | | Day 648—Sale of IRM, Inc. Building |
| | | Day 715—Sale of NY Condo |
| | | Day 739—District Court enteres order denying 5th Amendment Motion |
| | | Day 767—MNB files motion to dismiss |
| | | Day 815—Sale of IRM, Inc. Auto |

The involuntary petition phase of this case comprised 50 days from August 1, 1989 through September 19, 1989. The chapter 11 phase of this case comprised 356 days from September 19, 1989 through September 10, 1990. As of February 1, 1994, the chapter 7 phase of this case lasted 1,241 days from September 10, 1993 through February 1, 1994. The chapter 7 phase consists of successive phases: (a) the debtor's fifth amendment litigation which consisted of 383 days; and (b) dismissal litigation which lasted 908 days as of February 1, 1994.[11]

Similarly, during the chapter 7/motion to dismiss sub-phase of this proceeding (day 761 of this case through the present), this court is unable to find unreasonable delay attributable to the debtor.[12]

### Conclusion

 Dismissal with prejudice is a severe sanction to which a court should resort only infrequently and only upon a creditor's satisfaction of a heavy burden of proof. *Hall v. Vance*, 887 F.2d 1041 (10th Cir.1989). Such dismissal with prejudice requires a clear record of contumacious conduct of delay and mendacity. *In re Martin–Trigona*, 35 B.R. 596, 601 (S.D.N.Y.1983) (delay and contempt); *In re Frieouf*, 938 F.2d 1099, 1104 (10th Cir.1991) (delay and contempt); and *In re Cooper*, 146 B.R. 843 (D.Kan.1992) (delay and mendacity).

Accordingly, dismissal with prejudice forecloses discharge and is admittedly a harsh sanction requiring the clearest proof of a level of bad faith. This court on this current record and in light of the supplemental briefs and authority cannot now find such indicia of bad faith. Therefore this court must reverse its prior order and this case is hereby dismissed without prejudice.

**IT IS SO ORDERED.**

11. During the chapter 7/fifth amendment sub-phase of this proceeding (days 406 through 733 of this case):
 a. the trustee sold the debtor's Detroit condominium ($55,000), furniture ($20,000) and New York condominium ($475,000) (*Id.* nos. 32, 41 and 44); and the debtor's corporation's office building ($79,050) (*Id.* no. 43.);
 b. the debtor attended the chapter 7 creditor's meeting, which extended over five full days (Tr. 2/1/94, p. 56.) during which the identified Romtex A.G.'s immediate past presidents (Messrs. Heller and Haberli), Romtex A.G.'s accountant (Neutra Treuhand), Romtex A.G.'s attorney (Mr. Surtees) and Romtex A.G.'s bankers (Union Bank of Switzerland and Mr. Perino (Admitted Fact No. 39.);
 c. the debtor amended her schedules to reflect an "unknown" value of the account receivable from Romtex A.G. to Jolland Ltd. (Admitted Fact No. 45.); and
 d. after 301 days of litigation over the trustee's effort to compel her testimony, the District Court upheld the debtor's assertion, with respect to 25 questions, of her fifth amendment privilege at the chapter 7 first meeting of creditors. (*Id.* nos. 29 and 46.).

12. During the chapter 7/Motion to Dismiss sub-phase of this proceeding (day 761 of this case through the present):
 a. the trustee sold the debtor's corporation's automobile ($10,000) (*Id.* no. 48);
 b. the trustee and the debtor partially compromised the debtor's jewelry exemption (id. no. 49.); and;
 c. the Bankruptcy Court denied Michigan National Bank's Motion to Dismiss (*Id.* no. 51.) and the bank's subsequent appeal required 166 days to resolve (*Id.* nos. 52 and 54.).