**In re Sergio GARCIA and Marisa Garcia, Debtors.**

No. 09–22828 JPK.

United States Bankruptcy Court;
N.D. Indiana,
Hammond Division.

Sept. 7, 2012.

Miles W. Rich, Roswell, GA, for Debtors.

*MEMORANDUM OF DECISION CONCERNING MOTIONS TO DISMISS/BAR TO REFILING*

J. PHILIP KLINGEBERGER,
Bankruptcy Judge.

This contested matter had its genesis with the filing on November 19, 2010, as record # 748, of a Joint Motion to Dismiss to Dismiss With Prejudice Filed by Pilgrim Financing, LLC and Arthur D. Pringle, III ("Joint Motion"). Pilgrim Financing, LLC ("Pilgrim") and Arthur D. Pringle, III ("Pringle") asserted in the Joint Motion that the Chapter 11 case of Sergio Garcia ("Sergio") and Marisa Garcia ("Marisa") should be dismissed based upon a number of grounds, and that Sergio and Marisa should be barred from seeking relief under Chapter 11 of the United States Code, in essence permanently.

A preliminary pre-trial conference was held on December 17, 2010, the results of which were memorialized in pertinent part in record # 765 as follows:

*ORDER CONCERNING FURTHER PROCEEDINGS ON JOINT MOTION TO DISMISS*

Pursuant to the court's order entered on December 6, 2010 (record entry No. 757), a preliminary pretrial conference was held on December 17, 2010 with respect to the Joint Motion to Dismiss filed on November 19, 2010 by Pilgrim Financing LLC and Arthur D. Pringle III (record entry No. 748). The debtors appear by counsel Catherine Molnar–Boncela; Arthur D. Pringle III appears by counsel Greg A. Bouwer and James Yannakopoulos; Pilgrim Financing LLC appears by counsel Natasha Wojtkowski and Jonathan Petersen; the appearance of Carol Fraley for Wells Fargo Financial is noted.

IT IS ORDERED as follows:

1. Issues raised by the joint motion will be bifurcated for the purposes of hearing. The following issues/grounds asserted by the joint movants will be first heard and determined:

A. Alleged violations by the debtors of cash collateral orders entered by the court, including manner of collection of rents;

B. Alleged failures by the debtor to disclose interests in property which should comprise property of the Chapter 11 bankruptcy estate;

C. Alleged failures by the debtors to cooperate with respect to Rule 2004 examinations, including alleged failures to comply with orders of the court regarding those examinations; and

D. Alleged misrepresentations, misstatements, or fraudulent statements made by the debtors at meetings of creditors held pursuant to 11 U.S.C. § 341.

2. A Final Hearing with respect to the joint motion will begin on **February 15, 2011, at 9:30 a.m.;** the court has reserved **February 15, 16, 17** and **February 18 beginning at 1:00 p.m.,** for the final hearing.

. . .

4. There are compelling circumstances, as stated by the court on the record at hearings held on December 1, 2010 and December 17, 2010, that prevent the court from deciding the joint motion not later than 15 days after the commencement of the hearing on that motion, which hearing is deemed to have commenced on December 17, 2010.

On February 15, 2011, Sergio and Marisa filed their Debtors' Verified Statement Concerning Joint Motion to Dismiss by Pilgrim Financing, LLC and Arthur Pringle.[1]

The initial evidentiary hearing on the Joint Motion was held on February 16 and February 17, 2011. At the close of the movants' case on February 17, 2011, counsel for Sergio and Marisa moved for what the court deemed as a "Judgment on Partial Findings". The court made an initial ruling on this request at the February 17, 2011, hearing, and then stated its written memorialization of that ruling in record # 801, filed on March 15, 2011. This document states the following:

*ORDER ON FEDERAL RULE BANKRUPTCY PROCEDURE 7052/FEDERAL RULE CIVIL PROCEDURE 52(c) MOTION BY THE DEBTORS AT THE CLOSE OF THE MOVANTS' CASE ON DISMISSAL OF THE DEBTORS' CASE*

At the close of the movants' case on February 17, 2011, the counsel for the debtors moved for what the court construes as a Judgment on Partial Findings pursuant to Fed.R.Bankr.P. 9014(c)/Fed.R.Bankr.P. 7052/ Fed.R.Civ.P. 52(c). The court ruled that with respect to Sergio Garcia, the motion was denied because the movants had established a *prima facie* case. The debtors' counsel moved separately as to the debtor Marisa Garcia. That motion was denied as well.

This order is the written memorialization of the court's ruling, and constitutes the order on the debtors' motion, supplanting the court's February 7, 2011 in-court ruling.

The case before the court is the joint Chapter 11 case of Sergio Garcia and Marisa Garcia. 11 U.S.C. § 302(a) provides that a joint *case* is commenced by

1. Certain statements made by Sergio in this document will be addressed further.

a single petition by a husband and wife. One *case* is thus created.

11 U.S.C. § 302(b) provides: "After the commencement of a joint case the court shall determine the extent, if any, to which the debtors' *estates* shall be consolidated." There has been no determination in this *case* that the debtors' estates should be consolidated. Fed. R.Bankr.P. 1015(b)(1) provides for joint *administration* of the *estates* in a joint husband/wife case. There has been no order of joint administration of the *estates* of Sergio Garcia and Marisa Garcia.

11 U.S.C. § 1112(b)(1) provides for dismissal of a *case* under stated circumstances. Despite the existence of two separate *estates*, there is only one *case:* the joint case of Sergio Garcia and Marisa Garcia. The contested matter arising from the movants' joint motion concerns this joint *case:* there are not two different cases to consider.

The debtors' counsel's motion under Rule 52(c) confuses the concepts of joint *estates* with the concept of a joint case. Marisa Garcia is not the debtor in a separate case, and the fate of both her and Sergio Garcia's joint case under a motion pursuant to 11 U.S.C. § 1112(b)(1) is to be determined in relation to the independent conduct of one in relation to the joint case. As husbands' and wives' fates sometimes rise or fall on the individual fortunes or actions of one spouse, so too goes the fate of the joint *case* of Sergio Garcia and Marisa Garcia.

The court determines that the motion made pursuant to Rule 52(c) on behalf of Marisa Garcia has no sustainable basis: The court determines that the movants have established a *prima facie* case with respect to Sergio Garcia.

Thus, IT IS ORDERED that the motion is denied. (emphasis in original)

Thereafter, Sergio and Marisa filed a Motion to Dismiss on April 8, 2011, as record entry # 813, the last paragraph of which states the debtors' suggestion of resolution of issues concerning dismissal of the case and bar of each of the debtors to re-filing a subsequent case under the Bankruptcy Code, as follows:

WHEREFORE, the Debtors, Sergio Garcia and Marisa Garcia, respectfully request that the Court dismiss the this Chapter 11 case on the following stipulated conditions pursuant to 11 U.S.C. § 1307(b). Debtor, Sergio Garcia agrees not to file a new bankruptcy proceeding for 1 year from the date of this motion. Debtor, Marisa Garcia agrees not to file a new bankruptcy proceeding for 180 days from the date of this motion.

By record entry # 814, the court scheduled a final hearing on the debtors' Motion to Dismiss on May 19, 2011; this hearing was re-scheduled to July 14, 2011. By record entry # 824, the court stated its preliminary determination that the case would be dismissed, and scheduled a hearing for July 14, 2011 with respect to matters concerning winding up of the case, including termination of an arrangement established by court order with respect to Allied Realty, Inc. By record entry # 825, the court again reiterated its preliminary position that the case would be dismissed, and scheduled oral argument on the issue of the extent, if any, of a bar to re-filing to be imposed upon each of the debtors.

Matters concerning collection of rentals by Allied Realty, Inc. resulted in collateral discovery and investigation. Following the conducting of several hearings, the following docket order was made on October 28, 2011 as record # 878, concerning hearings held on October 25, 2011:

Docket Entry: Hearing held on 10/25/11 RE:(related document(s) [748] Motion to Dismiss Case filed by Arthur D. Pringle III and Pilgrim Financing LLC. APPEARANCES: Sergio Garcia, Atty. Boncela on behalf of Debtor, Attys. Bouwer & Yannakopoulos on behalf of Arthur D. Pringle, III, Atty. Petersen on behalf of Pilgrim Financing LLC, Atty. Prokop on behalf of U.S. Trustee and Peter Hazifotis, Receiver. It is ORDERED: (1) The evidentiary record previously established is reopened to consider evidence of the "cross-correlation" of funds forwarded to the debtor(s) by the conservator Allied Realty and deposit of those funds into DIP account(s) of the debtor(s). (2) A hearing will be held on December 6, 2011 at 1:30 P.M. to consider evidence regarding subparagraph (1) above and to conduct oral argument on the motion(s). The parties to the oral argument shall direct the court as much as possible to the portions of the evidentiary record upon which they rely for their respective positions in relation to the motion(s). (3) The issues to be determined by the court are: (a)Whether the Chapter 11 case should be dismissed or converted to a case under Chapter 7.(b)The extent of any bar to refiling a case under Title 11 to be imposed on the debtor(s). (pg.) Final arguments were made by the parties on December 6, 2011, resulting in the court's entry of record # 897 on December 8, 2011, stating the following:

Docket Entry: Hearing/Final Arguments conducted RE: (related document(s) 748 Motion to Dismiss Case filed by Arthur D. Pringle III & Pilgrim Financing LLC and 813 Motion to Dismiss Case filed by Sergio Garcia and Marisa Garcia. APPEARANCES: Sergio Garcia, Atty. Boncela on behalf of Debtors, Atty. Yannakopoulos on behalf of Arthur D. Pringle III and Atty. Petersen on behalf of Pilgrim Financing LLC. The case will be dismissed, not converted to Chapter 7 [dismissal is not effective until the final order is entered]. The court takes the nature/extent of any condition to dismissal under 11 U.S.C. Section 349(a)/11 U.S.C. Section 105 under advisement. (pg.) [2]

It is unnecessary to state the jurisdictional basis for the court's consideration of the foregoing matters: the parties have agreed that the court has full jurisdiction to address both the Joint Motion and the Motion to Dismiss filed by Sergio and Marisa, and has final adjudicatory authority with respect to those matters.

■■■ Technically, there are two separate contested matters before the court: the first is the Joint Motion filed by Pringle and Pilgrim, and the second is the Motion to Dismiss filed by Sergio and Marisa. Obviously, both of those motions establish that all of the parties assert that dismissal of case number 09–22828 is appropriate, a result presaged by the court

2. One other matter between Pringle and the Garcia arose subsequent to the conducting of final arguments—the filing by Pringle of a motion for relief from stay on December 28, 2011 as record # 901. The court granted this motion by record # 911 entered on February 17, 2012, which states:

ORDER ON MOTION FOR RELIEF FROM STAY FILED BY ARTHUR D. PRINGLE III The Court having reviewed the Motion for Relief from Stay filed by Arthur D. Pringle

III hereby finds in favor of Arthur D. Pringle III on all requests for relief. The automatic stay in this case is lifted as to Arthur D. Pringle III's pursuit of any and all claims against Sergio and Marisa Garcia in the pending district court litigation, *Pringle v. Marissa Garcia, et al.* Case No. 2:09–cv–00022. Arthur D. Pringle may now proceed in such litigation as if no automatic stay applied to either Sergio Garcia and Marisa Garcia.

at numerous hearings and in several docket orders. During the course of various hearings, the court elicited evidence as to whether or not the alternative of conversion of the case to a case under Chapter 7 should be considered. That evidence established that most property of the bankruptcy estate subject to administration in a Chapter 7 case is subject to the claims of secured creditors to the extent that there is little, if any, equity to be administered by a Chapter 7 Trustee with respect to nearly all of the real property which comprises property of the Chapter 11 bankruptcy estate. While perhaps there is a potential for investigation of pre-petition transactions, and certain post-petition transactions as well—which, if brought to fruition, might result in some possible additional asset base in the Chapter 7 case— the magnitude and expense of those investigations significantly overwhelm any presently foreseeable potential for recapture of assets. The court determines that it is *not* in the best interest of creditors and the estate to convert this Chapter 11 case to a case under Chapter 7. The court further determines that the record establishes that there is no reasonable likelihood that any plan of reorganization can be confirmed in this case: hearings were held with respect to a plan of reorganization proposed by Sergio and Marisa, and also with respect to two separate Disclosure Statements filed by the debtors with respect to that plan. Neither Disclosure Statement was approved. More significantly, based upon the evidence at hearings concerning consideration of disclosure statements and the plan, the court determines that there is no even minimal likelihood that Sergio and Marisa could submit a plan to the court which could be confirmed under the criteria required by 11 U.S.C. § 1129. The court therefore finally determines that case number 09–22828 will be dismissed, and that the evidence of record sustains dismissal on each of the following grounds:

1.  11 U.S.C. § 1112(b)(4)(A);
2.  11 U.S.C. § 1112(b)(4)(B);
3.  11 U.S.C. § 1112(b)(4)(D);
4.  11 U.S.C. § 1112(b)(4)(E); and
5.  11 U.S.C. § 1112(b)(4)(F).[3]

A final judgment of dismissal of case number 09–22828 will be entered.

That brings us to the next issue: whether or not an injunction should be entered against the debtors precluding either or both of them from filing a petition for relief under Title 11 of the United States Code for a specified period of time, including Pringle's and Pilgrim's assertion that the case should be dismissed *with prejudice*, which would result in any debts subject to the Chapter 11 case from ever being discharged in any other case initiated by either of the debtors. In this context, Pringle and Pilgrim have consistently stood by their position that the Chapter 11 case should be dismissed with prejudice, or at minimum dismissed with a bar to re-filing of a significantly extended

---

**3.** With respect to this last basis, the monthly reports required to be filed by the debtors-in-possession were routinely late, and often were filed in batches to make up for delinquent months for which a report was not timely filed. While the court did not formally sanction the debtors for the untimeliness of filing of monthly reports, the court did not excuse that untimeliness, either.

A ground advanced by the Joint Motion is that the debtors allegedly failed to cooperate with respect to Rule 2004 examinations. The record in this context establishes that the primary ground for this assertion is that the debtors failed to comply with document production requests in relation to examinations, as contrasted to an outright failure to attend a Rule 2004 examination. The court therefore does *not* find that 11 U.S.C. § 1112(b)(4)(G) provides a basis for dismissal of the case.

period. At various stages of the proceedings, Sergio and Marisa have countered with a proposal that would bar Marisa from filing a petition for relief under Title 11 for a period of six months; would bar Sergio from filing a petition for relief under Title 11 for a period of one year; and would in addition provide an *in rem* bar to the inclusion in any subsequent bankruptcy case filed by either of them of any property of the bankruptcy estate in case number 09–22828.

In the court's view, Title 11 of the United States Code provides three potential statutory bases for the imposition of an injunction concerning subsequent filing of a bankruptcy petition when a case is dismissed, and two statutory bases for the imposition of conditions in relation to a subsequently filed case. The three bases for the imposition of an injunction are 11 U.S.C. § 109(g), 11 U.S.C. § 105(a) and 11 U.S.C. § 349(a); the latter two provisions provided the authority for imposition of conditions.

■ The court first notes that it does not agree with the limitations imposed upon the use of 11 U.S.C. § 349(a) determined in *In re Frieouf*, 938 F.2d 1099 (10th Cir.1991). This court views 11 U.S.C. § 349(a) to be a separately utilizable provision by which a bar to re-filing, or conditions with respect to a re-filed case, may be imposed-exclusive of any provisions of 11 U.S.C. § 109(g). That being said, there is remarkably little helpful authority with respect to the decisional elements to be employed to determine the extent of a bar or conditions with respect to a subsequently filed case. The court concurs with Pilgrim and Pringle that the most useful cases are the decision of the Honorable Kent Lindquist in *In re McClure*, 69 B.R. 282 (Bankr.N.D.Ind. 1987), and particularly the decision of the Honorable Robert E. Grant in the case of

*In re Hall*, 258 B.R. 908 (Bankr.N.D.Ind. 2001). The following statements in *Hall* are particularly instructive:

> Pursuant to § 349(a) of the United States Bankruptcy Code, the court may, in the exercise of its discretion and for cause, dismiss a bankruptcy case with prejudice. 11 U.S.C. § 349(a); *In re Frieouf*, 938 F.2d 1099, 1103 (10th Cir. 1991). Although the term is often used somewhat loosely to refer to any type of limitation upon the opportunity for future bankruptcy relief, the true dismissal of a case "with prejudice" will forever bar the subsequent discharge of all the debtor's prefiling obligations to creditors. *Frieouf*, 938 F.2d at 1103. Consequently, it is tantamount to the total denial of discharge. *In re Smith*, 133 B.R. 467, 470 (Bankr.N.D.Ind.1991). Because of this, dismissal with prejudice is universally recognized as an extraordinary sanction. *See*, *In re Merrill*, 192 B.R. 245, 253 (Bankr.D.Colo.1995) (describing it as the "capital punishment of bankruptcy"); *In re Javarone*, 181 B.R. 151, 155 (Bankr.N.D.N.Y.1995)(describing dismissal with prejudice as "draconian relief"). As the party asserting that this sanction is appropriate, Welbilt bears the burden of proving that it is. *In re Moses*, 171 B.R. 789, 798 (Bankr. E.D.Mich.1994), *aff'd*, 227 B.R. 98 (E.D.Mich.1996).

> There are no specific statutory criteria which guide the exercise of the court's discretion in determining whether a dismissal should be with prejudice. As a result, the courts have traditionally examined a multitude of factors associated with the filing and prosecution of the case to determine whether sufficient cause exists to dismiss a case with prejudice. In general, however, dismissal with prejudice is viewed as an appropriate response to a debtor's egregious

misconduct, contumacious actions, or abuse of the bankruptcy process. *See, e.g., In re Leavitt,* 209 B.R. 935, 939 (9th Cir. BAP 1997), *aff'd,* 171 F.3d 1219 (9th Cir.1999); *In re Covino,* 245 B.R. 162, 170 (Bankr.D.Idaho 2000); *In re Weaver,* 222 B.R. 521, 523 (Bankr.E.D.Va. 1998); *In re Ladd,* 82 B.R. 476, 477 (Bankr.N.D.Ind.1988). Relying upon the factors set forth in *In re Grieshop,* 63 B.R. 657 (N.D.Ind.1986), Welbilt argues that the debtor's case was filed in bad faith. It then contends that, because bad faith constitutes a sufficient basis for dismissal with prejudice, dismissal with prejudice is appropriate here. The court disagrees.

The court readily accepts the proposition that bad faith can justify dismissal with prejudice. Nonetheless, Welbilt's argument fails to appreciate the reality that "bad faith" is a term which is used to describe a broad range of improper conduct, only some of which is sufficient to support the extreme sanction of dismissal with prejudice. There is the bad faith which can be associated with a lack of good faith or other misconduct to which we do not want to lend approbation, and then there is the *BAAAD FAAAITH* which is synonymous with egregious misconduct, contemptuousness, malfeasance, or systemic abuse. *Grieshop* itself recognizes this distinction. *See, Grieshop,* 63 B.R. at 663 (lack of good faith (i.e. bad faith) can not be summarily equated with malfeasance and abuse). Thus, the term "bad faith" actually represents a continuum of impropriety, which at one end may support the simple dismissal of a case and at the other end justify dismissal with the most extreme sanctions imaginable. Somewhere in between these two extremes, the court's response to a debtor's actions moves from being without prejudice, to some type of mild prejudice, with sanctions becoming progressively more severe as a debtor's actions become more egregious. *See, e.g., In re McNichols,* 254 B.R. 422 (Bankr.N.D.Ill.2000) (case dismissed pursuant to § 349(a) with prejudice to refiling within 1 year); *In re Weaver,* 222 B.R. 521 (Bankr.E.D.Va.1998)(dismissal with prejudice to debtor's ability to obtain discharge of a particular creditor's debt); *In re Leavitt,* 209 B.R. 935 (9th Cir. BAP 1997) (affirming bankruptcy court order forever enjoining debtor from receiving discharge on all pre-petition debts under 349(a)), *aff'd,* 171 F.3d 1219 (9th Cir.1999).

The possible existence of such a continuum has been lost upon Welbilt. It has naively seized upon the concept that a case may be dismissed with prejudice because of the debtor's bad faith, and then essentially advanced the argument that all bad faith justifies dismissal with prejudice. This is error. Although a case may be dismissed with prejudice because of bad faith, not all bad faith justifies doing so. Instead, the case law reveals a decided reluctance to dismiss a case with the type of prejudice Welbilt seeks in all but the most extreme examples of debtor misconduct and abuse. Indeed, in *Grieshop,* the decision upon which Welbilt relies for its bad faith argument, the issue of dismissal with prejudice was not even before the court. The creditor merely sought either relief from the automatic stay or the simple dismissal of the case. It never argued for anything remotely similar to the extreme sanctions Welbilt asks the court to impose upon this debtor. Therefore, to the extent Welbilt relies upon the *Grieshop* factors to demonstrate the type of bad faith which supports dismissal with prejudice, its reliance is misplaced.

Dismissal with prejudice under § 349(a) is not meant to be a remedy for every instance of debtor misconduct. Instead, its use is more properly limited to situations where a debtor's actions constitute egregious misconduct, directly related to the bankruptcy case, which prejudices creditors or undermines the integrity of the bankruptcy system. *See, In re Tomlin,* 105 F.3d 933, 937 (4th Cir.1997).

258 B.R. at 910–912.

■ Even the debtors acknowledge that some form of bar to re-filing is appropriate in this case, and the court concurs. With respect to the outer extreme of "punishment" asserted by Pilgrim and Pringle—as the court repeatedly advised the parties at various hearings—dismissal with prejudice is an extreme remedy, akin to a death sentence with respect to future adjustment of any debts which were subject to discharge in case number 09–22828. Based upon the evidence in this case, the court determines that dismissal with prejudice is not appropriate. As explained by Judge Grant in *In re Hall,* the continuum of dismissal with prejudice or with a bar begins with simple dismissal with no sanction, and extends through a continuum at which the other outer extreme is dismissal with prejudice. As quoted above:

> Somewhere in between these two extremes, the court's response to a debtor's actions moves from being without prejudice, to some type of mild prejudice, with sanctions becoming progressively more severe as a debtor's actions become more egregious.

258 B.R. at 911.

Four bases have been delineated for consideration of this issue, as stated in the record # 765 order:

A. Alleged violations by the debtors of cash collateral orders entered by the court, including manner of collection of rents;

B. Alleged failures by the debtor to disclose interests in property which should comprise property of the Chapter 11 bankruptcy estate;

C. Alleged failures by the debtors to cooperate with respect to Rule 2004 examinations, including alleged failures to comply with orders of the court regarding those examinations; and

D. Alleged misrepresentations, misstatements, or fraudulent statements made by the debtors at meetings of creditors held pursuant to 11 U.S.C. § 341.

■ Let's first address Marisa Garcia. The court finds her testimony at the February 17, 2011 evidentiary hearing to be disingenuous as to her knowledge of business matters and financial documentation. Marisa's profession of ignorance of even the basic documents involved in secured financial transactions, including the concept of a promissory note, is incredulous. Her involvement in the use of debtor-in-possession bank accounts is a matter of fact, both by the establishment of accounts with her as the authorized signatory for withdrawal, and by her exercise of that authority. Nevertheless, there is no significant direct evidence in the record that Marisa actively engaged in the conducting of her husband's business, or was duplicitous with him in any actions he undertook with respect to that business. There is no significant direct evidence that she had knowledge of the manner in which Sergio conducted his business, including matters in relation to non-compliance with the court's orders concerning use of cash collateral and the use of Allied Realty, Inc. as a collection "conservator". Based upon the evidentiary record, the court views Marisa's conduct as not actively contumacious. Marisa's own request to voluntarily dismiss case number 09–22828—if grant-

ed—would result in the imposition of a 180–day bar. The court determines that a one year bar for Marisa Garcia is more appropriate, and that she should be barred from filing a petition seeking relief under Title 11 of the United States Bankruptcy Code for a period of one year from the date of entry of the final judgment dismissing this case.

■ We now turn to Sergio.

As a general proposition, the court deems Sergio's testimony given at hearings concerning Pringle's and Pilgrim's Joint Motion to be largely evasive and disingenuous, and at times "too cute" to the point of being obstructionist. This is merely a general observation, and does not in and of itself establish any particular ground for any particular form of bar or condition on re-filing. It is what it is.

Now let's review each of the four separate grounds asserted by Pringle and Pilgrim, leaving the most serious of those in terms of a violation for last.

First, the movants allege that Sergio failed to disclose interests in property which should have comprised property of the Chapter 11 bankruptcy estate. The substantive evidence in this context is weak, including the attempt to tag *this Sergio Garcia* with ownership of property clearly held by another person with the same name. While there may have been several parcels of real estate which were not disclosed in Schedule A, or whose ownership was erroneously disclosed as either being joint or several among the two debtors, the court is not satisfied that any such deviation from the required norm has much materiality in the context of the case as a whole, the administration of the case, or the availability of assets for creditors.

Next is the asserted failure of the debtors, primarily Sergio, to cooperate in Rule 2004 examinations. The court always viewed this ground as being essentially a "throw in", but one which does have significance nevertheless. While there was no evidence that Sergio made a mockery of the Rule 2004 examination process, the record does establish that Sergio was less than effectively cooperative with respect to the timely provision of documents legitimately requested by the examiners for use in examinations, and that the manner in which documentation was provided did indeed impede the movants' Rule 2004 examination efforts.

The next ground concerns alleged misrepresentations, misstatements or fraudulent statements made by Sergio at the § 341 meeting/meetings. The court determines that the evidence fails to establish anything material in this context which bears upon the extent of a bar or condition with respect to re-filing.

That brings us to the final ground: alleged violations by Sergio of cash collateral orders, and of orders concerning collection of rents by Allied Realty, Inc. The principal orders entered in this context are record # 60 which related to the use of cash collateral, a document jointly agreed to by counsel for the Garcia and by counsel for Pilgrim Financing, LLC; and record # 76, an Agreed Order regarding the mechanism to be employed for collection of rents and deposit of rental payments by Allied Realty, Inc., a document signed by counsel for the Garcia, counsel for Pilgrim, counsel for Pringle and the United States Trustee. These orders established a clear procedure with respect to collection of rentals from property of the bankruptcy estate, and a clear procedure for the establishment of segregated accounts for the deposit of those rentals and subsequent use of monies deposited in those segregated accounts. In addition to the admissions made by Sergio in the record # 788 Verified Statement concerning use of rentals

for the purpose of making repairs to properties, the record conclusively establishes to the court's satisfaction that Sergio, in concert with others at his bidding, interfered with the collection of rentals by Allied Realty, Inc.; diverted certain rentals which should have been collected by Allied Realty, Inc. for uses not authorized by any court order; and failed to deposit monies constituting cash collateral/property of the estate into the segregated debtor-in-possession accounts provided for by orders of the court. Based upon the testimony of various "tenants" at the hearings on the Joint Motion, the court also determines that certain monies so diverted were not in fact used for repairs to, or maintenance of, rental properties of the estate. This conduct is a *serious* breach of the fiduciary relationship owed by a debtor-in-possession to his creditors, to the court, and to court-appointed entities, in this case Allied Realty, Inc. as in essence a "conservator" with respect to collection of rents.

From the foregoing, three of the grounds advanced by Pilgrim and Pringle have little real substance with respect to how **baaaaad** the conduct of Sergio Garcia was in relation to this case, but the use of estate property in a manner not authorized by the court—in fact at times in total disregard of this court's orders—is a material and very substantial concern.

The court will not utilize 11 U.S.C. § 105(a) in this case. 11 U.S.C. § 109(g) doesn't reach the issues in this case in relation to Sergio. So, in the context of the spectrum of conditions which may be imposed under 11 U.S.C. § 349(a), how **baaaaad** was Sergio's conduct? If one views dismissal with prejudice as a sanction appropriate to employ upon the bankruptcy equivalent of a serial killer who employs a guillotine as his murder instrument, Sergio is not a serial killer. But, in a spectrum of conduct, Sergio is not Jean Valjean, whose sole crime was to steal a loaf of bread from a shop so that he could feed his family. He's somewhere in between. His actions were not the worst of actions in the worst of times by any means, but his actions were not the best of actions in the worst of times by any means, either—to mix metaphoric references between two classic works of fiction concerning the French Revolution.

Sergio has essentially acquiesced in the entry of an *in rem* bar which would preclude the inclusion of any/all real property of the bankruptcy estate of case number 09–22828 in any subsequent bankruptcy case filed by either of the debtors. The court determines that this suggested bar goes a bit too far, but just a bit. It became clear throughout the course of this case that the essential business of Sergio Garcia in relation to acquiring and rehabilitating properties for re-sale, or acquiring properties for the purposes of rental, was not an effective business at all. Thus, an *in rem* bar concerning any business properties is in the court's view appropriate. But, given that Sergio Garcia's and Marisa Garcia's primary source of income for their household—which includes a number of minor children and other child "dependents"—is Sergio's business, it is not unforeseeable that they will encounter problems with their personal finances, including perhaps mortgage payments in relation to their home. Schedule D designates two secured creditors with respect to the debtors' residence—both of which appear to be outside the fray of Sergio's business activities, and the conduct evidenced by him toward secured creditors in relation to court orders. Barring the inclusion of the Garcias' residence as property of a bankruptcy estate in a subsequent bankruptcy case is the item that seems to the court to go too far. The court does endorse, and finds, that an *in rem* bar as to any properties other than

the residence located at 11488 Valley Court, St. John, Indiana as being included in property of the estate of any subsequent bankruptcy case filed by Sergio Garcia, Marisa Garcia, or any person or entity in association with them or related to them, is appropriate. That leaves us with the *in personam* bar as to the period of time that Sergio will be barred from seeking relief under Title 11. As the parties recognize, and as every court that has addressed this issue recognizes, this is a subjective evaluation, not a precise "elementally based" process. One factor that the court deems relevant to include is the somewhat intricate and complex litigation which may be necessary to determine lien interests in properties and liabilities of Sergio in relation to obligations secured by those lien interests, and the fact that said litigation will be primarily conducted in state court. The court has already granted relief from the stay to Pringle to proceed in case number 2:09–cv–00022, which while pending in the United States District Court is a case that could take some time to unravel and resolve. In the context of Chapter 7 and Chapter 13 cases, the most extreme injunctive bar that this court ordinarily imposes with respect to obdurate debtors who have evidenced a concerted intent to "blow off" the system, and have evidenced that intent by the filing of multiple cases with no apparent purpose other than to thwart creditors—has been three years. While Sergio's conduct does not evidence the total "thumb your nose at the court, the trustee and creditors" attitude of the most egregious filers with whom the court has dealt, the violations of the cash collateral order and of the Allied Realty, Inc. conservator order (*particularly* the latter)— undertaken as they were in the context of a debtor-in-possession who owes a fiduciary duty to creditors—are as serious as is the filing of serial multiple hopeless cases

solely to impose the automatic stay and the consistent disregard of any obligations to perform as a debtor in those cases.

Putting everything together, the court deems that a three-year bar should be imposed upon Sergio Garcia with respect to his filing of a petition under Title 11.

Based upon the foregoing, a final judgment will be entered which provides the following:

A.  Case number 09–22828 is dismissed.

B.  Marisa Garcia is enjoined from filing any petition seeking voluntary relief under Title 11 of the United States Bankruptcy Code, for a period of one year measured from the date of entry of the final judgment.

C.  Sergio Garcia is enjoined from filing any petition seeking voluntary relief under Title 11 of the United States Bankruptcy Code, for a period three calendar years measured from the date of entry of final judgment.

D.  An *in rem* injunction is imposed with respect to any and all real property constituting property of the bankruptcy case of Sergio and Marisa Garcia in case number 09–22828, or which should have comprised property of the bankruptcy estate in said case—with the sole exception of the residence located at 11448 Valley Court, St. John, Indiana—to the extent that no such real property shall be included as property of the bankruptcy estate under 11 U.S.C. § 541 in any case under Title 11 of the United States Bankruptcy Code voluntarily initiated *at any time* by Sergio Garcia; Marisa Garcia; any child of Sergio or Marisa Garcia; any person related by blood or marriage to Sergio or Marisa Garcia; or any entity in which Sergio or Marisa Garcia holds—or at any time held—any interest as a member or shareholder, or any position as a member of a board of directors, a president, a vice pres-

500

ident, a secretary, a treasurer, or any other official capacity.